IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BLUEFIELD DIVISION

**DAVID OKES,**

    **Plaintiff,**

**vs.**                                                    **CIVIL ACTION NO. 1:19-CV-00796**

**ANDREW SAUL, COMMISSIONER OF**
**SOCIAL SECURITY,**

    **Defendant.**

## PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. By Order entered November 18, 2019 (ECF No. 3), this case was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are Plaintiff's Motion for Judgment on the Pleadings and his Memorandum in Support of Judgment on the Pleadings and Defendant's Brief in Support of Defendant's Decision. (ECF Nos. 16, 15, and 19, respectively)

Having fully considered the record and the arguments of the parties, the undersigned respectfully **RECOMMENDS** that the United States District Judge **DENY** Plaintiff's request for an award of benefits or remand (ECF No. 16), **GRANT** Defendant's request to affirm the decision below (ECF No. 19); **AFFIRM** the final decision of the Commissioner; and **DISMISS** this matter from the docket of this Court for the reasons stated *infra*.

**Procedural History**

The Plaintiff, David Okes, (hereinafter referred to as "Claimant"), protectively filed his application for Title II benefits for a second time on September 9, 2016[1], alleging disability since April 1, 2015[2] due to a mild stroke, high blood pressure, high cholesterol, and arthritis. (Tr. at 192, 213) His claim was initially denied on January 26, 2017 (Tr. at 118-122) and again upon reconsideration on March 6, 2017 (Tr. at 127-133). Thereafter, Claimant filed a written request for hearing on April 13, 2017. (Tr. at 134-135)

An administrative hearing was held on September 10, 2018 before the Honorable Nathan Brown, Administrative Law Judge ("ALJ"). (Tr. at 37-76) On December 20, 2018, the ALJ entered an unfavorable decision. (Tr. at 21-36) On January 14, 2019, Claimant sought review by the Appeals Council of the ALJ's decision. (Tr. at 188-191) The ALJ's decision became the final decision of the Commissioner on October 8, 2019 when the Appeals Council denied Claimant's Request for Review. (Tr. at 1-6)

On November 5, 2019, Claimant timely brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (ECF No. 2) The Defendant (hereinafter referred to as "Commissioner") filed an Answer and a Transcript of the Administrative Proceedings. (ECF Nos. 12, 13) Subsequently, Claimant filed a Motion for Judgment on the Pleadings and his Memorandum in Support of Judgment on the Pleadings (ECF Nos. 16, 15), in response, the Commissioner filed a Brief in Support of Defendant's Decision (ECF No. 19).

---

[1] In this case, to qualify for Title II benefits, Claimant must prove he was disabled during the relevant period, from April 1, 2015 through December 31, 2017, and that he was fully insured, or had coverage at the time of his disability. See 42 U.S.C. § 423(a), (c); 20 C.F.R. §§ 404.101(a), 404.131(a).

[2] Although Claimant alleged an onset date of April 18, 2012 in his application (Tr. at 95), he amended his alleged onset date to April 1, 2015 at the administrative hearing (Tr. at 40), the day after the date of the first unfavorable decision. (See Tr. at 77-93)

Consequently, this matter is fully briefed and ready for resolution.

**Claimant's Background**

Claimant was 59 years old on the date last insured (December 31, 2017) and considered a "person of advanced age" throughout the underlying proceedings. See 20 C.F.R. § 404.1563(e). (Tr. at 31) Claimant has a Bachelor's Degree in Business Management and almost completed a Master's Degree (Tr. at 214, 358). He had worked as a special education teacher for thirteen years before being "told" that he "needed to retire" in April or May of 2012 (Tr. at 48, 356). He had a stroke in 2008 and was out of work for three months before returning to work. (Tr. at 232)

**Standard**

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. § 404.1520. If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. § 404.1520(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. § 404.1520(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. § 404.1520(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. § 404.1520(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant

work. Id. § 404.1520(f). By satisfying inquiry four, the claimant establishes a *prima facie* case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).

The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. Id. § 404.1520(g). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

**Summary of ALJ's Decision**

In this particular case, the ALJ determined that Claimant met the requirements for insured worker status through December 31, 2017. (Tr. at 26, Finding No. 1) Next, the ALJ determined that Claimant had not engaged in substantial gainful activity during the period from his amended alleged onset date of April 1, 2015 through his date last insured of December 31, 2017. (Id., Finding No. 2)

At the second inquiry, the ALJ found that Claimant had the following severe impairments: obesity; degenerative disc disease of the thoracic and lumbar spine, and degenerative joint disease of the right knee. (Id., Finding No. 3)

At the third inquiry, the ALJ concluded Claimant's impairments did not meet or equal the level of severity of any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 27, Finding No. 4) The ALJ then found that through the date last insured, Claimant had the residual functional capacity ("RFC") to perform light work

>except he can lift and or carry 20 pounds occasionally and ten pounds frequently. He can sit, stand, and/or walk for six hours. He can push and or pull as much as he can lift and or carry. He can operate foot controls with the right foot frequently. The claimant can climb ramps and stairs occasionally. He can never climb ladders, ropes, or scaffolds. He can balance, stoop, kneel, and crouch occasionally. He can never crawl. The claimant can frequently work at unprotected heights, with moving mechanical parts, and in extreme cold and in vibration.

(Tr. at 28, Finding No. 5)

At step four, the ALJ found Claimant was not capable of performing his past relevant work. (Tr. at 30, Finding No. 6) At step five, the ALJ found that in addition to Claimant's age, education, work experience and RFC, Claimant had acquired work skills from his past relevant work that were transferable to other occupations with jobs that existed in significant numbers in the national economy that Claimant could perform. (Tr. at 31, Finding Nos. 7-10) Finally, the ALJ determined Claimant had not been under a disability from his amended alleged onset date of April 1, 2015 through his date last insured, December 31, 2017. (Tr. at 32, Finding No. 11)

**Claimant's Challenges to the Commissioner's Decision**

In support of his appeal, Claimant asserts a single ground of error: that an independent medical examination report from Rollin Hawley, M.D., submitted after the ALJ's unfavorable decision and directly to the Appeals Council, constituted new and material evidence that showed a reasonable probability that it would change the outcome of the ALJ's decision. (ECF No. 15 at 4-7) Claimant asserts that Dr. Hawley's opinion indicated Claimant was effectively disabled as a result of his decreased executive function. (Id. at 8) Claimant requests this Court to reverse and order a reward for benefits, or alternatively, to remand to correct these errors. (ECF No. 16)

In response, the Commissioner states that Claimant failed to prove that he was disabled under the pertinent law and standard. (ECF No. 19 at 9-10) Additionally, the Commissioner argues

the independent medical examination report Claimant submitted to the Appeals Council did not constitute new or material evidence, and it did not relate to the period at issue; Claimant did not show good cause for failing to submit this evidence earlier or show a reasonable probability that it would change the outcome of the ALJ's decision. (Id. at 10-15) The Commissioner asks this Court to affirm the final decision. (Id. at 15)

**The Relevant Evidence of Record**[3]

The undersigned has considered all evidence of record pertaining to Claimant's arguments and discusses it below.

Primary Care Provider Records:

In 2015 and 2016, Claimant saw his primary care provider, Todd Smith, D.O., and consistently reported that he felt "well" with no complaints (*see, e.g.*, Tr. at 313, 318). He further indicated that he exercised three days per week and had "good" energy (*see, e.g.*, Tr. at 313, 318, 322). Examinations routinely showed he was in no acute distress, had a normal gait and posture, normal reflexes, and normal muscle strength and tone in all four extremities (*see, e.g.*, Tr. at 315, 319-320, 323-324).

Examinations in 2017 continued to be unremarkable in that Claimant had a normal gait, no edema in his lower extremities, full (5/5) muscle strength, normal muscle tone, and intact sensation (Tr. at 375, 378, 382, 385). Claimant reported that he still felt "well," had no complaints, and had a "good" energy level (Tr. at 371, 381, 386). He continued to exercise three days per week (Id.). In November, although a venous extremity study was ordered for leg swelling, no other abnormal clinical findings were noted (Tr. at 372). The record does not contain any follow-up treatment for

---

[3] The undersigned focuses on the relevant evidence of record pertaining to the issues on appeal as referenced by the parties in their respective pleadings.

swelling.

Mental status evaluations throughout the relevant period were normal (*see, e.g.*, Tr. at 315, 319, 323). Dr. Smith routinely assessed that Claimant "complete[ly] recover[ed]" from his 2008 stroke (*see, e.g.*, Tr. at 318, 322, 332, 377). Dr. Smith's records contain no abnormal mental status findings: Claimant was noted to be routinely "cooperative" and "well groomed" (*see, e.g.*, Tr. at 314, 319, 323). Dr. Smith reported that Claimant had "no current emotional problems" (*see, e.g.*, Tr. at 318, 322, 374).

Psychological Consultative Report:

Given that the medical record was thin, the agency paid for Claimant to attend a consultative examination. On January 16, 2017, Claimant was examined by Kelly Robinson, M.A. (Tr. at 355-361). Claimant reported that "sometimes I walk into a room and forget, sometimes just little short term stuff," but "nothing else really major" (Tr. at 355). He denied receiving any mental health treatment (Tr. at 356). On examination, his mood was euthymic; he was alert and oriented; his thought processes were logical and coherent; his thought content was normal; he denied any hallucinatory experiences; his memory was normal; he understood directions; and worked at a "normal" pace (Tr. at 357-358). He maintained "good" eye contact and reported having regular contact with several friends (Tr. at 360). He engaged in back and forth conversation (Id.). Given the normal findings, Ms. Robinson concluded that Claimant did not have a neurocognitive condition (Tr. at 359).

State Agency Medical Opinions:

At the initial level of review in November 2016, Rabah Boukhemis, M.D., considered the record concerning Claimant's physical impairments and determined that Claimant could perform

a range of medium work (Tr. at 100-102). Specifically, he opined that Claimant could lift and/or carry up to fifty pounds occasionally and twenty-five pounds frequently; sit, stand and/or walk for about six hours in an eight-hour workday; frequently balance, stoop, kneel, and crouch; and occasionally crawl and climb ramps/stairs and ladders/ropes/scaffolds (Id.). Dr. Boukhemis noted that Claimant had a history of a stroke with "complete recovery" (Tr. at 101). In March 2017, Narenda Parikshak, M.D., reviewed Claimant's physical impairments at the reconsideration stage and reached the same conclusion (Tr. at 112-114).

    State Agency Psychological Opinions:

In January 2017, Timothy Saar, Ph.D., reviewed the record and found there was no evidence of a mental medically determinable impairment (Tr. at 98-99). Paul Bickham, Ph.D., reaffirmed these findings on reconsideration in March 2017 (Tr. at 110-111).

    Evidence Submitted to Appeals Council:

After the ALJ issued his written decision, Claimant submitted additional evidence to the Appeals Council in connection with his request for review of the ALJ's decision (Tr. at 17-20). The evidence consisted of an independent medical examination performed by Rollin Hawley, M.D. on January 11, 2019 (Id.).

On examination, Dr. Hawley noted Claimant was calm and cooperative, and could follow one step commands (Tr. at 18). He was oriented and could perform simple tasks such as spelling the word world forward and backward and subtracting serial 7s from 100 (Id.). Within his report, Dr. Hawley expressed a number of opinions: He found Claimant was capable of lifting at a level consistent with light work, however, due to Claimant's "severe brain damage," he "would have trouble" directing, controlling, or planning activities of others; influencing people, making

judgments and decisions, and dealing with people (Tr. at 17-18). Dr. Hawley also referenced his prior consultation letters dated September 29, 2011 and May 14, 2012, when he saw Claimant for uncontrolled hypertension, "with a hypertensive emergency in 2008" noting that at the time, Claimant "was inattentive, poorly responsive, often sitting with a glassy eyed stare; finding that he had decreased equilibration of tandem gait with eyes closed more than open; accentuating dystonic posturing of his left upper extremity, which was seen even on normal walking." (Tr. at 17) Dr. Hawley noted those conditions to be generally unchanged except for worsening, "perhaps due to more strokes or aging." (Id.). Dr. Hawley further opined that Claimant "has significant brain damage, stemming from his multiple bilateral strokes, caused by his uncontrolled hypertension, with hypertensive emergency in 2008" and that this brain damage, in addition to "effect of aging, has specifically affected his frontal lobes, causing him to sit and stare, and have preservation of posture of his upper extremities, and spastic gait[.]" (Tr. at 18) Dr. Hawley further noted Claimant "has difficulty relating to me in our examination, and decreased executive function, motivation, and will to initiate thought and action, making him fundamentally unemployable." (Id.)

**The Administrative Hearing**

Claimant Testimony:

Claimant testified that he left his job as a special education teacher because he was forgetting some of his duties, such as meetings or how to log into the computer programs, and the physical aspect of his job was getting more difficult. (Tr. at 49) He stated that he continued to have problems with his memory and with his joint pain. (Tr. at 50) He takes medication daily and uses colored containers to help him remember when to take it. (Tr. at 50-51) He also writes down his appointments and other reminders in a daily planner to help him with everyday things, including

paying bills. (Tr. at 52-53) Claimant has been determined to be disabled through the Virginia Teacher's Retirement System. (Tr. at 53)

Claimant has hypertension for which he takes medication, which he stated controls it "[r]easonably well." (Tr. at 55) He also has joint pain and uses a prescription ointment which helps. (Id.) Claimant testified that the pain in his hips and lower back hurt the worst; he will lie down occasionally during the day if the pain gets bad. (Tr. at 56-57)

Claimant testified that he spends most of his days going out to eat breakfast, and maybe walk a little bit, get on his computer or TV, or "do a little music". (Tr. at 58) He keeps everything organized to avoid forgetting things. (Id.) He stated that he tries to walk about a mile every day when he feels like it, and will sometimes go to the gym and do light work on the machines. (Tr. at 60-61) He estimated he uses about a hundred pounds on the weight machines. (Tr. at 61)

Vocational Expert ("VE") Testimony:

In response to a hypothetical individual of the same age, education, and work experience as Claimant with the limitations outlined in the controlling RFC, *infra*, the VE opined the individual could not perform Claimant's past relevant work as a special education teacher. (Tr. at 68) Such an individual, however, has transferrable skills and could perform other work that exists in significant numbers in the national economy, including the representative occupations of cashier, schoolteacher, homebound teacher, and preschool teacher. (Tr. at 68-70)

**Scope of Review**

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence, however, the Court determines if the final decision of the Commissioner is based upon an appropriate application of the law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Further, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). If substantial evidence exists, the Court must affirm the Commissioner's decision "even should the court disagree with such decision." Blalock, 483 F.2d at 775.

**Analysis**

As noted *supra*, on October 8, 2019, the Appeals Council determined that the evidence submitted by Claimant did not show a reasonable probability that it would change the outcome of the ALJ's decision (Tr. at 1-2); the Appeals Council denied Claimant's request for review of the ALJ's decision and did not exhibit the late-submitted evidence (Tr. at 1-6).

Social Security Regulations allow two types of remand. Under the fourth sentence of 42 U.S.C. § 405(g), a court has the general power to affirm, modify or reverse the decision of the Commissioner, with or without remanding the cause for rehearing for further development of the evidence. 42 U.S.C. § 405(g); Melkonyan v. Sullivan, 501 U.S. 89, 97-98, 111 S.Ct. 2157, 2163, 115 L.Ed.2d 78 (1991). Where there is new medical evidence, a court may remand under the sixth sentence of 42 U.S.C. § 405(g) based upon a finding that the new evidence is material and that

good cause exists for the failure to previously offer the evidence. 42 U.S.C. § 405(g); Melkonyan, 501 U.S. at 98, 111 S.Ct. at 2163. The Supreme Court has explicitly stated that these are the only kinds of remand permitted under the statute. Melkonyan, 501 U.S. at 98, 111 S.Ct. at 2163.

Pursuant to 42 U.S.C. § 405(g), remand is warranted "upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding[.]" Evidence is "new" if it is not duplicative or cumulative. Wilkins v. Secretary, Dep't of Health & Human Serv., 953 F.2d 93, 96 (4th Cir. 1991) (*en banc*). "Evidence is material if there is a reasonable possibility that the new evidence would have changed the outcome." Id. The Regulations governing the circumstances under which the Appeals Council is to review an ALJ decision shows that additional evidence will not be considered unless the evidence is new and material and relates to the period on or before the date of the ALJ decision. See 20 C.F.R. § 404.970(a)(5) (emphasis added). This does not mean that the evidence had to have existed during that period; rather, evidence must be considered if it has any bearing upon whether the claimant was disabled during the relevant period of time. See Wooldridge v. Bowen, 816 F.2d 157, 160 (4th Cir. 1987); Cox v. Heckler, 770 F.2d 411, 413 (4th Cir. 1985); Leviner v. Richardson, 443 F.2d 1338, 1343 (4th Cir. 1971). "Pursuant to the regulations . . . , if additional evidence submitted by a claimant does not relate to the time period on or before the ALJ's decision, the evidence is returned to the claimant, and the claimant is advised about her rights to file a new application." Adkins v. Barnhart, 2003 WL 21105103, *5 (S.D.W. Va. May 5, 2003).

Additionally, the Appeals Council "will only consider additional evidence" that satisfies the requirements of Section 404.970(a)(5) if the claimant also shows "good cause" for not informing or submitting it to SSA prior to the hearing for the following specific reasons:

 (1)  our action misled you;

 (2)  you had a physical, mental, educational, or linguistic limitation(s) that prevented you from informing us about or submitting the evidence earlier; or

 (3)  some other unusual, unexpected, or unavoidable circumstance beyond your control prevented you from informing us about or submitting the evidence earlier. Examples include, but are not limited to:

  (i)  you were seriously ill, and your illness prevented you from contacting us in person, in writing, or through a friend, relative, or other person;

  (ii)  there was a death or serious illness in your immediate family;

  (iii)  important records were destroyed or damaged by fire or other accidental cause;

  (iv)  you actively and diligently sought evidence from a source and the evidence was not received or was received less than 5 business days prior to the hearing; or

  (v)  you received a hearing level decision on the record and the Appeals Council reviewed your decision.

Id. § 404.970(b).

Where evidence is not new, material, does not relate to the period on or before the hearing decision, does not create a reasonable probability that it would change the outcome of the case, or there is no good cause for failure to submit the evidence earlier (*e.g.*, unusual or unexpected circumstances such as death, illness, destruction of it by fire, or confirmation that the claimant actively and diligently sought evidence from a source who would not provide it earlier), the Appeals Council will send notice explaining why the evidence was not accepted and advise the claimant of his right to file a new application. Id. § 404.970(c).

There is no dispute that the Appeals Council informed Claimant of these pertinent Regulations by its notice dated October 8, 2019. Indeed, the Appeals Council advised Claimant

that he "must" show that the additional evidence is new, material, relates to the period at issue, and shows a reasonable probability of changing the outcome of the hearing decision, and that Claimant "must show good cause" for why he missed informing the agency about the evidence or submitting it earlier. (Tr. at 1).

As discussed above, the evidence submitted to the Appeals Council consisted of a single report concerning an independent medical examination dated January 10, 2019, over a year after Claimant's date last insured. As an initial matter, and as observed by the Commissioner, there has been no indication by Claimant as to why this evidence was not submitted during the prior proceeding, and no such explanation was provided to the Appeals Council. Claimant has provided no reason or argument that he meets any of the other specific good cause definitions outlined in 20 C.F.R. § 404.970(b). See Scherer v. Berryhill, No. 2:17-CV-53, 2018 WL 1960531, at *3 (W.D. Va. Apr. 26, 2018) ("Without the plaintiff failing into one of these good cause exceptions, the Appeals Council had no such duty to review the [additional] evidence.").

Additionally, although Dr. Hawley refers to prior consultation letters from September 2011 and May 2012, and that he more recently evaluated Claimant in January 2019, there is nothing from his latest consultative report that indicates this evidence relates to the relevant period under review. Further, though Claimant points out that Dr. Hawley is a board-certified neurologist with added qualifications in clinical neurophysiology, suggesting that this background lends gravitas to his opinion (ECF No. 15 at 7-8), the fact remains that Dr. Hawley's opinion was not before the ALJ, but most importantly, as noted *supra*, it does not relate to the relevant period. Significantly, the overwhelming medical evidence of record concerning the relevant period demonstrated that Claimant had "completely" recovered from his 2008 stroke and that he was doing well both

physically and psychologically. Pursuant to the plain language in Section 404.970(a)(5), the Appeals Council only considers evidence that "relates to the period *on* or *before* the date of the hearing decision[.]" (emphasis added) Accordingly, the Appeals Council properly disregarded the post-decision submission. Shuman v. Berryhill, No. 3:16-CV-62, 2017 WL 3476972, at *4 (N.D.W. Va. Aug. 14, 2017) ("Because the Appeals Council concluded that this evidence did not relate back to the period on or before the ALJ's decision, it was not required to be considered and was properly excluded from the record.").

In short, the undersigned **FINDS** that Claimant has simply failed to demonstrate that the additional evidence he submitted to the Appeals Council would have had a reasonable probability of changing the outcome of the ALJ's decision. Additionally, the undersigned **FINDS** that the final decision is supported by substantial evidence.

**Recommendations for Disposition**

For the reasons set forth above, it is hereby respectfully **PROPOSED** that the District Court confirm and accept the foregoing findings and **RECOMMENDED** that the District Court **DENY** the Claimant's request for reversal or remand (ECF No. 16), **GRANT** the Defendant's request to affirm the decision below (ECF No. 19), **AFFIRM** the final decision of the Commissioner, and **DISMISS** this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable David A. Faber, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings

and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 106 S.Ct. 466, 475, 88 L.E.2d 435 (1985), reh'g denied, 474 U.S. 1111, 106 S.Ct. 899, 88 L.E.2d 933 (1986); Wright v. Collins, 766 F.2d 841 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.), cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.E.2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Faber, and this Magistrate Judge.

The Clerk of this Court is directed to file this Proposed Findings and Recommendation and to send a copy of same to counsel of record.

ENTER: October 20, 2020.



Omar J. Aboulhosn
United States Magistrate Judge